IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID RUSSELL DANNER,** | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-11-00946** |
| **v.** | : | **(Judge Rambo)** |
| **KENNETH P. CAMERON,** *et al.,* | : | |
| **Respondents** | : | |

# M E M O R A N D U M

Petitioner David Russell Danner ("Danner"), who is presently incarcerated at the State Correctional Institution in Coal Township, Pennsylvania, initiated this action on May 17, 2011, by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended August 18, 2011.  (Doc. 11.)  In the petition, Danner challenges his 2008 conviction and sentence in the Court of Common Pleas of Bradford County, Pennsylvania ("trial court" or "Bradford County court").  For the reasons that follow, the petition will be denied.

## I.    Background

On April 24, 2008, Danner was found guilty of rape, sexual assault, and indecent assault following a jury trial in the Bradford County court.  (*See* Doc. 22-8 at 8 (Respondents' Reproduced Record).)  As stated by the Pennsylvania Superior Court in its decision affirming the PCRA court's denial of post-conviction collateral relief:

"The charges stemmed from allegations Danner, while on a hunting trip, engaged in sexual intercourse with his then 15 year old daughter." (Doc. 22-9 at 45; *Commonwealth v. Danner*, No. 2144 MDA 2008 (Pa. Super. Ct. Nov. 17, 2009).)  On August 4, 2008, the trial court sentenced Danner to an aggregate term of imprisonment of 11 to 22 years.  (*See* Doc. 22-8 at 1, Sentencing Order.)  Danner was represented by counsel at trial and sentencing.  (*See* Doc. 22-8 at 2-22.)

Danner did not file a direct appeal to the Superior Court of Pennsylvania.  On September 9, 2008, Danner filed a counseled petition for post-conviction collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546, as amended on October 31, 2008.  (*See* Doc. 22-8 at 33-43.)  In his PCRA petition, Danner set forth several claims of ineffective assistance of trial counsel, claiming that (1) trial counsel failed to object to the prosecution's leading questions, and (2) trial counsel failed to present witnesses to rebut the victim's testimony.[1]  (*See id.*)

On November 11, 2008, the trial court, now sitting as the PCRA court, issued an order noticing its intention to dismiss the PCRA petition.  (Doc. 22-8 at 44-45.)

---

[1]  In his PCRA petition, Danner also raised a claim related to ineffective assistance of counsel at a preliminary hearing.  (Doc. 22-8 at 33-43.)  However, in its November 11, 2008 order giving notice of its intent to dismiss the PCRA petition without holding a hearing, the PCRA court dismissed this claim as not cognizable under the PCRA.  (*See* Doc. 22-9 at 45.)

However, before a final order was entered, Danner filed a notice of appeal to the Pennsylvania Superior Court on December 10, 2008. (*See* Doc. 13 ¶ 1(g).) A second notice of appeal was filed on March 17, 2009, due to procedural confusion arising from Pennsylvania's Rules of Criminal Procedure. (*Id.* ¶ 1(h).) The appeals were consolidated by Superior Court order dated May 15, 2009. (*Id.* ¶ 1(I).) Danner raised the following issues on appeal:[2]

> I. Was trial counsel ineffective for failure to call and secure witness to testify at the trial on behalf of [Danner]?
>
> II. Was trial counsel ineffective during the course of the trial for not objecting to numerous leading questions by the prosecution?

(Doc. 22-9 at 46.)

On November 17, 2009, the Superior Court affirmed the PCRA court decision. (*See id.* at 44-50.) Danner filed a petition for allowance of appeal, raising the following issues:

---

[2] In its decision affirming the trial court's denial of PCRA relief, the Superior Court noted that Danner had presented a third argument: "Did the court commit error in denying [Danner]'s post-conviction collateral relief petition?". (Doc. 22-9 at 46 n.6.) However, the court concluded, "We do not address this argument separately, because it is encompassed in the other two." (*Id.*)

I. The Superior Court committed error when it did not address an issue finding that it was not raised in the PCRA petition when in fact it was and was part of the Reproduced Record.

II. The Superior Court's decision was not in accord with the standards set forth by this Court when evaluating ineffectiveness of Trial Counsel when credibility is at issue.

III. The Superior Court has set an unreasonable and unconstitutional burden on the Petitioner when stating that in order to prove prejudice the Petitioner must prove that the Commonwealth could not have entered evidence in a correct manner, specifically the Petitioner would have to prove what the Commonwealth[']s witnesses would have said if they had not been asked leading questions but questioned properly.

(Doc. 22-10 at 2.)  The Pennsylvania Supreme Court denied allocatur on May 19, 2010.  (Doc. 22-11 at 21.)

On May 17, 2011, Danner filed his original habeas petition.  (Doc. 1.)  By order dated July 27, 2011, the court directed Danner to file one all-inclusive habeas petition raising all grounds for relief.[3]  (Doc. 8.)  Thereafter, Danner filed his amended petition

---

[3]  In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and *Mason v. Myers*, 208 F.3d 414 (3d Cir. 2000), the court issued a formal notice to Danner that he could either have the petition ruled on as filed, but lose his ability to file a second or successive petition, absent certification by the court of appeals, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism and Effective Death Penalty Act.  (Doc. 4.)  Danner was advised that if he did not return his Notice of Election form within 45 days, the court would rule upon his current petition as filed.  (*Id.*)  Prior to filing his Notice of Election, Danner filed a motion to supplement his originally-filed habeas petition.  (Doc. 5.)  Thereafter, on July 25, 2011, Danner filed his Notice of Election, accompanied by the supplement to the habeas petition.  (Docs. 6 & 7.)  As a result, by order dated July 27, 2011, the court directed Danner to file one all-inclusive habeas petition.  (*See* Doc. 8.)

on August 18, 2011.  (Doc. 11.)  On September 19, 2011, the court issued an order directing service of the amended petition.  (Doc. 12.)  On October 19, 2011, Respondents responded to the petition.  (Doc. 13.)  Danner filed his reply on November 17, 2011.  (Doc. 17.)  On August 3, 2012, the court directed Respondents to file a complete copy of the state court record, (Doc. 21), which followed on September 5, 2012, (Doc. 22).  After the court received further briefing from the parties in accordance with a January 10, 2013 order, (Doc. 27), this matter is now ripe for disposition.

## II.  <u>Discussion</u>

### A.  <u>Timeliness of the Habeas Petition</u>

In their answer to the petition, as a threshold matter, Respondents first argue that the instant § 2254 petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1).  Upon review, the court finds that the petition has been timely filed.

The court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

5

States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). A state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> * * *
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); *see Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999).

Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

In the instant case, after being found guilty by a jury, Danner was sentenced to a term of imprisonment of 11 to 22 years by the Bradford County court on August 4, 2008. Danner did not file a direct appeal. Therefore, his conviction became final on September 8, 2008.[4] *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(3) ("judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"). The one-year period for the statute of limitations commenced running as of that date, and expired on September 8, 2009. Hence, the federal petition, which was filed on May 17, 2011,[5] appears to be untimely. However,

---

[4] In his traverse, Danner asserts that Respondents have not accurately calculated the timeliness of his petition. Specifically, he agrees that he was sentenced on August 4, 2008, but claims that the sentencing order was not entered and served until August 8, 2008. (*See* Doc. 17 at 3.) In support, Danner attaches as an exhibit the Bradford County court's docket sheet which indicates an entry and service date of August 8, 2008. (Doc. 17-1 at 1.) Further, he cites to Pennsylvania Rule of Appellate Procedure 903(a), which states in pertinent part, "the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa. R.A.P. 903(a); *see also* Pa. R.A.P. 108(a) ("in computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk or office of the government unit makes such copies public.") For purposes of this discussion, the court will apply Danner's filing dates.

[5] Respondents claim that Danner filed his habeas petition on August 18, 2011. (*See* Doc. 13 ¶ 1(m).) While it is true that, pursuant to a court order, Danner filed an amended habeas petition on August 18, 2011, (Doc. 11), he initiated this action with the filing of his original habeas petition on May 17, 2011, (Doc. 1).

the court's analysis does not end there. Consideration of both statutory and equitable tolling, if necessary, must be undertaken.

With respect to statutory tolling, section 2244(d)(2) tolls the statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). On September 9, 2008, Danner filed a PCRA petition in the Bradford County court. While a properly-filed PCRA petition will toll the running of AEDPA's statute of limitations, an improperly-filed PCRA petition does not have the same effect. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("'properly filed' state-court [post-conviction] petitions must be 'pending' in order to toll the limitations period. Thus, a state court petition like Tinker's that is filed following the expiration of the federal [AEDPA] limitations period cannot toll that period because there is no period remaining to be tolled.") (some internal quotations omitted), *reh'g denied*, 273 F.3d 1123 (11th Cir. 2001).

The federal limitations period in the instant case expired on September 8, 2009. However, prior to this date, Danner filed a PCRA petition in the Bradford County court on September 9, 2008. As a result, the statute of limitations became tolled at that point. Prior to his filing date, the statute began running on September 8, 2008, the

8

date his conviction became final.  It was tolled on September 9, 2008, when Danner

timely filed his PCRA petition.  At that time, one day had elapsed.  On May 19, 2010,

the Pennsylvania Supreme Court denied Danner's petition for allowance of appeal, at

which time the statutory tolling ceased to apply and the § 2244(d)(1) filing deadline

resumed.  Thus, the filing deadline for the instant habeas petition expired on or about

May 18, 2011 (May 19, 2010 plus the 364 days remaining on the statute prior to

tolling by filing of PCRA petition).  Based on the foregoing, since the instant petition

was filed on May 17, 2011, it is clear that Danner filed his action within the requisite

one-year statutory deadline, and the petition is timely.[6]

### B.     Claims Presented in the Habeas Petition

Now that it is clear that the habeas petition is timely, it is next necessary to

determine whether Danner's claims presented in his habeas petition have been

adequately exhausted in the state courts and, if not, whether the circumstances of his

case are sufficient to excuse his procedural default.  The claims Danner raises as

grounds for relief are: (1) he is actually innocent of the charges of which he was

convicted and sentenced, (2) counsel at the preliminary hearing, trial, sentencing, and

---

[6]  Because the petition was timely filed by virtue of statutory tolling, the court need not discuss equitable tolling.

PCRA proceedings were ineffective,[7] (3) the prosecutor withheld discovery from

Danner's trial counsel in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), (4) the

prosecutor violated Danner's due process and equal protection rights when he asked

leading questions of witnesses and made erroneous arguments supporting Danner's

guilt to the jury, (5) the Pennsylvania Superior Court denied his right to fair and

impartial appellate review by reviewing the PCRA court's notice of intent to dismiss

without a hearing rather than remanding to the PCRA court for a further decision, and

(6) he was denied his right to a fair and impartial jury.  (Doc. 11.)  In their answer to

---

[7] The general rule is that, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I).  However, in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309 (2012), the Supreme Court was presented with the issue of "whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding."  *Martinez*, 132 S. Ct. at 1313.  The Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may *establish cause* for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.,* 132 S. Ct. at 1315 (emphasis added).  However, the Supreme Court did not answer the question of whether a prisoner has a *constitutional* right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial. *Id.*  Thus, the state of the law as it stands now is that Danner cannot bring a claim of ineffectiveness of PCRA counsel in a habeas petition. *See* 28 U.S.C. § 2254(I).

Further, to the extent that Danner claims that counsel failed to file a direct appeal on his behalf, while such a claim is cognizable in proceedings under § 2254, *see Roe v. Flores-Ortega*, 528 U.S. 470 (2000), Danner fails to explain how such renders his conviction invalid and unconstitutional.  Thus, Danner fails to satisfy the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668 (1984), *see infra*, Section II.B.2.a, at 34-36.  Moreover, as is evidenced by the Pennsylvania Superior Court's review of Danner's PCRA petition, Danner was permitted to challenge his conviction with no limitation placed on any issue presented.  Thus, in effect, Danner's direct appeal was reinstated through his PCRA proceedings, and Danner cannot argue any prejudice suffered from the deprivation of a direct appeal.  As such, any claim here would be denied.

Danner's petition, Respondents contend the following: (1) only certain of Danner's claims of ineffective assistance of counsel were presented in the state courts and therefore all other claims should be dismissed as unexhausted or procedurally defaulted, and (2) Danner's exhausted claims of ineffective assistance of counsel should be denied.  (Doc. 14.)

For purposes of discussion, the court will first discuss exhaustion and procedural default as to Danner's claims, followed by a discussion on the merits of any surviving claims.

### 1.    Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.[8]  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus

---

[8]  28 U.S.C. § 2254(b)(1) provides the following:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
    (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B)(I) there is an absence of available State corrective process; or
    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

proceedings, or other available procedures for judicial review. *See, e.g.*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996), *abrogated on other grounds by Beard v. Kindler*, 558 U.S. 53 (2009); *Burkett v. Love*, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied.[9] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The petitioner has the burden of establishing that the exhaustion requirement has been met. *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1999); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Doctor*, 96 F.3d at 681; *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254 (c).

---

[9] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under section 2254. *See In re Exhaustion of States Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000) (per curiam).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Lines*, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750; *Caswell v. Ryan*, 953 F.2d 853, 857, 861-62 (3d Cir. 1992). To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. *Coleman*, 501 U.S. at 750. To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Once

"cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. *See Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000). A credible allegation of "actual innocence" constitutes a "miscarriage of justice" that enables a federal court to hear the merits of otherwise procedurally defaulted habeas claims. *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial. *Id*. at 324.

### a.     Claim One - Actual Innocence

In his first claim for habeas relief, Danner claims that he is actually innocent of the charges of which he was convicted and sentenced. Also set forth within this claim are a number of assertions with respect to ineffective assistance of counsel.

To the extent that Danner is raising a stand-alone claim of actual innocence, such a claim must be denied because it is not cognizable in federal habeas. *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007) (citing *Herrera v. Collins*, 506 U.S. 390 (1993)).[10] However, a credible claim of actual innocence can act as a "gateway"

---

[10] In *Johnson v. Sobina*, the district court explained:

The reason that stand-alone claims of actual innocence are not cognizable in federal habeas was given in *Herrera*. In that case, the Supreme Court held that federal habeas review is not available "absent an independent constitutional violation occurring in the underlying state criminal proceeding," and that "a claim of 'actual innocence' is not itself a constitutional claim." 506 U.S. at 400, 404. The Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes before the federal habeas court not as one who is innocent, but as a convicted criminal. *Id*. at 399-400. Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions. *Id*. at 401 (internal quotations and citations omitted). The Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact." *Id*. at 400. "Federal courts are not forums in which to relitigate state trials." *Id*. at 401 (quotations and citation omitted). Thus, the Court rejected Herrera's claim that, even if the proceedings were entirely fair and error free, his innocence would make his execution a constitutionally intolerable event.

Based upon the *Herrera* decision, the Third Circuit Court repeatedly has emphasized that in non-capital cases such as [sic] this case: "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds

through which a federal habeas petitioner may pass to have an otherwise procedurally barred constitutional claim considered on the merits. *See Schlup*, 513 U.S. at 315 (quoting *Herrera*, 506 U.S. at 404). Thus, the court will consider whether Danner has presented new evidence of his actual innocence in order to establish a miscarriage of justice that would allow this court to reach the merits of any of his barred sub-issues scattered throughout his habeas petition, such as the ineffectiveness sub-issues he raises in this Claim One.

Under the two-prong standard for showing a fundamental miscarriage of justice, a petitioner first must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324. The evidence is new "only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001). Second, once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable

---

for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004), quoting *Herrera*, 506 U.S. at 400; *Albrecht*, 485 F.3d at 121-22. Thus, Petitioner's stand-alone claim of actual innocence is not cognizable under the federal habeas statute.

*Johnson v. Sobina*, No. 08-262, 2011 WL 1790053, at *7 (W.D. Pa. Mar. 30, 2011).

juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. As stated more recently by the Supreme Court:

> [T]he standard is demanding and permits review only in the "extraordinary" case. At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt– or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House v. Bell*, 547 U.S. 518, 538 (2006) (citations omitted). In the habeas context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). When considering a claim of actual innocence, a district court may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 331-32.

In his petition, the new evidence Danner submits in support of his claim of actual innocence is four affidavits, as well as correspondence Danner had after trial with his daughter, the victim, and with appellate counsel. (Doc. 11 at 37-53.) The court will address this evidence as two sets - the first set is three affidavits of family members, and the second set is evidence relating to the victim's alleged recantation.

With respect to the first set of evidence, the first affidavit is an undated joint

affidavit of Pamela Y. Hoff, Danner's cousin, and her husband, Gaylen E. Hoff.  (Doc. 11 at 37-38.)  The second affidavit is a December 29, 2010 joint affidavit of Carl and Judy Muffley, Danner's in-laws.  (*Id*. at 39.)  The third affidavit is an undated affidavit of Laurie Danner, Danner's wife and the victim's step-mother.  (*Id*. at 40-41.) In all three affidavits, the affiants assert that they observed Danner's daughter soon after the incident and had no indication that she was in distress or had suffered a sexual assault or trauma.  (*Id*. at 37, 39, 40.)  Both the Hoffs and Laurie Danner assert that they do not believe the crime happened.  (*Id*. at 37, 40.)  All affiants also assert that they informed Danner's trial counsel that they were available and willing to testify at trial.  (*Id*.)  In fact, Judy Muffley testified at trial that she observed Danner's daughter when she and Danner came back from the hunting trip, at which point she stated that she was excited to be moving in with her father.  (Doc. 22-6 at 40.)  Even excluding the fact that Judy Muffley did testify at trial, none of these affidavits provides sufficient support to make this an "extraordinary" case worthy of the fundamental miscarriage of justice label.  *See House*, 547 U.S. at 537 (holding actual innocence requires substantive review only in extraordinary cases).  Importantly, these affidavits do not directly contradict the victim's testimony.  There is no evidence that these family members were present at the time of the crime.  Accordingly, their

opinions as to guilt or innocence are insufficient to justify substantive review despite procedural default. Further, at most, like Judy Muffley's trial testimony, the affiants' testimony could serve as impeachment testimony, attacking the credibility of the victim. As such, Danner has not demonstrated here that, "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538.

Turning to Danner's new evidence relating to the victim's recantation, Danner has submitted the affidavit of Lorrie Danner, his mother, dated June 24, 2011. (Doc. 11 at 43-44.) She asserts that in either late 2009 or early 2010, she met with the victim, her granddaughter, who told her that she had lied about the sexual assault because she did not want to move away from her friends. (*Id.* at 43.) She also told her grandmother that she wanted to "change her story" but the District Attorney told her that if she did, she "could go to jail." (*Id.*) Finally, she suggested to her grandmother that they travel together to visit her father in prison, but Lorrie Danner refused. (*Id.* at 44.) In addition to this affidavit, Danner also submits several letters written by the victim to her father in March and April 2010. (*Id.* at 45-48.) In these letters, the victim writes, *inter alia*, that she misses her father and would like to visit

him, but does not mention wanting to recant her trial testimony on the sexual assault.[11] (*See id*.)  Finally, Danner submits correspondence he had with his appellate counsel regarding his PCRA petition and other appeal efforts from October 2008 through July 2010.  (*Id*. at 49-53.)  In an October 2008 correspondence, Danner states that he would like his daughter's recantation recorded for his state collateral proceedings.  (*Id*. at 49.)  However, there is nothing attached containing such a recantation, and, in fact, Danner's counsel writes in 2010 that he has not heard back from the victim regarding a recantation.  (*Id*. at 53.)

Initially, the court recognizes that recantation testimony is inherently untrustworthy.  "The cases are legion that courts look upon recantations with great suspicion."  *United States v. Williams*, 70 F. App'x 632, 634 (3d Cir. 2003).  Even so, viewing this evidence offered by Danner in total, it is apparent that Danner was asserting that the victim would provide a recantation as far back as October 2008, before Danner filed his amended PCRA petition.  (*See* Doc. 22-8 at 33-43.)  However,

---

[11]  At trial, the victim testified that on the day and evening of the sexual assault, she was drinking alcohol with her father at a neighbor's house, as well as at her grandmother's house.  (Doc. 22-4 at 41-43.)  After the victim went to bed at her grandmother's house, Danner entered the room and began rubbing the victim's leg and arm.  (*Id*. at 44-45.)  He then pulled down her sweatpants, got on top of her, and placed his penis in her vagina.  (*Id*. at 46-48.)  After she pushed him off and left the room, Danner later approached her in the home's basement and said "he could hear the Devil laughing at him."  (*Id*. at 48-50.)

the victim's alleged recantation was never submitted to the state courts, either in the PCRA proceedings or on further appeal. In fact, other than the account of Danner's mother, the record before this court does not contain a recantation from the victim herself. As such, the court finds that, on this record where the "new evidence" of Danner's actual innocence was available to Danner to present to the state courts but he failed to do so, Danner has procedurally defaulted his claim of actual innocence. *See, e.g., Dejan v. United States*, 208 F.3d 682, 687 (8th Cir. 2000) ("We therefore find that Dejan's actual innocence claim on the dismissed drug count has itself been procedurally defaulted"); *cf. Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Stated otherwise, Danner's claim of actual innocence offered to excuse his procedural default of any constitutional claims in this Claim One is itself procedurally defaulted, and thus Danner cannot establish a miscarriage of justice as to excuse procedural default. *See Dorsey v. Wilson*, Civ. No. 07-509, 2008 WL 2952892, at *11 (W.D. Pa. July 30, 2008) (holding "[i]f a claim of cause to excuse procedural default can itself be procedurally defaulted, we fail to see why a claim of actual innocence offered to excuse a procedural default cannot also itself be procedurally defaulted, at least in the

situation where both the claimed new evidence was available to a petitioner as was a state procedural means by which to bring the claim of new evidence to the state courts").

Finally, to the extent that Danner suggests that his claims should be addressed on the merits solely because they are meritorious, notwithstanding the fundamental interests that the doctrine of procedural default serves, the court still cannot address his claims on the merits. As the Supreme Court declared, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316. As this court is bound by *Schlup*, Danner's unexhausted and procedurally defaulted claims cannot be addressed on the merits on the basis of a miscarriage of justice exception.

### b. Claim Two - Ineffective Assistance of Counsel

In his second claim for habeas relief, Danner claims that he received ineffective assistance of counsel throughout his criminal and post-conviction proceedings by the two counsel he obtained for such proceedings, Patrick Bierne, Esquire, and Richard Wilson, Esquire. (Doc. 11 at 33.) More specifically, Danner raises forty-three (43) sub-issues with respect to ineffective assistance. (*See* Doc. 11 at 11-24.) Upon

review, the court concludes that Danner has exhausted only two related issues: (1) whether trial counsel was ineffective for failing to call witnesses at trial to testify on his behalf; and (2) whether trial counsel was ineffective for failing to object to numerous leading questions by the prosecution. (*See* Doc. 22-9 at 46.) Notably, these two issues are not stand-alone claims presented in the instant habeas petition. Rather, Danner scatters references to these two exhausted issues throughout his six grounds for relief stated in this habeas petition. However, citing these two issues as argument in support of the overlying habeas claim does not mean that Danner has fully exhausted that overlying claim.[12] Therefore, because these two issues most logically fall within the expansive Claim Two, relating to ineffectiveness of all of Danner's counsel, the court will address the merits of these two issues as sub-issues of Claim Two, *infra*.[13] The remaining sub-issues are unexhausted because they were not raised in the state courts. Further, because it appears that any second PCRA petition filed by Danner would be untimely, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be

---

[12] In addition to this Claim Two, Danner's other claims presented contain an excessive number of sub-issues, almost all of which have not been raised in the state courts and are procedurally defaulted. As demonstrated *infra*, Danner has not established cause and actual prejudice or a miscarriage of justice to excuse the procedural default of these sub-issues.

[13] In addition, the court will address Claim Four, relating to whether the prosecutor violated Danner's rights by asking leading questions, in connection with this ineffectiveness claim, Claim Two. *See infra*, Section II.B.2.b, at 36-49.

23

filed within one year of the date judgment becomes final), these sub-issues are procedurally defaulted.

Despite this procedural default, Danner seeks to have these sub-issues reviewed on the merits. Therefore, the court will now discuss whether Danner has demonstrated either cause and actual prejudice, or a fundamental miscarriage of justice, so as to excuse procedural default of these sub-issues. *See McCandless*, 172 F.3d at 260. Initially, as noted *supra*, Danner's sub-issues with respect to ineffectiveness of PCRA counsel are not cognizable because he cannot claim constitutionally ineffective assistance of PCRA counsel. *See supra* note 7, at 10; 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) (no constitutional rights to effective assistance of counsel in state post-conviction proceedings). However, in response to the court's January 10, 2013 order (Doc. 27) directing the parties to further brief any procedural default of Danner's habeas claims, Danner cites *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), in his challenge to PCRA counsel's ineffectiveness.[14] Under *Martinez*, inadequate assistance of counsel at initial-review collateral proceedings "may establish cause" for procedural default of a trial counsel ineffectiveness claim.

---

[14] Danner, in fact, asks the court to review all sub-issues on the merits based on *Martinez*. As the court states herein, three sub-issues shall be addressed on the merits, *infra*. Therefore, the court will only discuss procedural default as to the sub-issues found unexhausted and procedurally defaulted.

*Id*. at 1315; *see also Coleman*, 501 U.S. at 750 (allowing federal review of defaulted claim if petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law"). This holding creates an exception to procedural default in states, such as Pennsylvania, where claims of ineffective assistance of trial counsel generally must be raised in an initial-review collateral proceeding, rather than on direct appeal. *See Martinez*, 132 S. Ct. at 1320; *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) ("[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."). Under *Martinez*, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, counsel was ineffective." *Martinez*, 132 S. Ct. at 1320. Therefore, if Danner's PCRA counsel was ineffective for failing to raise substantial claims of trial counsel ineffectiveness during the PCRA proceedings, it would constitute cause to excuse procedural default of those claims, and permit review here. *See id*. A "substantial" underlying claim is a claim that has "some merit." *Id*. at 1318-19.

The procedurally defaulted claims of trial counsel ineffectiveness that Danner would like this court to review on the merits are as follows:[15] (1) Attorneys Bierne and Wilson failed to disclose to the trial court their conflicts of interest and bias against Danner based on Attorney Bierne's familial relationship with the District Attorney and the Bradford County Jury Commissioner, (Doc. 11 at 11); (2) trial counsel failed to investigate and prepare defenses for all stages of the criminal proceedings, including failing to obtain phone records of Danner and his grandmother, reports and evaluations on the victim's statements to authorities, the victim's school records, and other forensic evidence, (*Id*. at 11-15, 18-20); (3) trial counsel failed to cross-examine witnesses at the preliminary hearing and to confirm that the testimony was being properly recorded, (*Id*. at 12-13); (4) trial counsel failed to object to the prosecutor's remarks made during trial about the victim's school counselor asking Danner to pick up the victim from school, the Bible,[16] and Danner's comment to the victim that "the Devil is laughing at me," (*Id*. at 14-16); (5) Attorney Wilson was ineffective when he stated to the jurors at trial that they "already heard some of the evidence outlined by

---

[15] For ease of discussion, the court will restate Danner's remaining thirty-one sub-issues relating to ineffectiveness of trial counsel, as many of these sub-issues are cumulative or duplicative. Further, the court notes that Danner's scattered presentation of these sub-issues lends to the court's failure to address these issues in numerical order.

[16] Danner is referring to the prosecutor remark in his opening statement that there are accounts of rape in the Bible. (Doc. 11 at 15-16.)

[the District Attorney]," (*Id*. at 14); (6) trial counsel failed to request that the jury be polled after the verdict was announced, (*Id*. at 14); (7) trial counsel failed to continue their representation of Danner after he fired them after trial, (*Id*. at 15); (8) trial counsel failed to inform the jury that the victim did not report the rape to her mother directly, "acted in every way that would be inconsistent with a victim," (*Id*. at 16), and failed to object to the trial court's instruction that a delay in making a complaint should be considered in judging the victim's credibility, (*Id*. at 16-17); (9) trial counsel failed generally to object to and move to strike testimony of various witnesses, including the victim and her mother, (*Id*. at 16, 18, 20-21); (10) trial counsel failed to object to the use of jurors who had served on a panel in another criminal case with similar charges the day before Danner's trial, (*Id*. at 21); (11) trial counsel failed to challenge the seating of a juror with hearing problems, (*Id*. at 21); and (12) trial counsel failed to challenge "potential jurors with bias," (*Id*.).

To establish these ineffectiveness claims, Danner first "must show counsel's performance was deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, he must show "the deficient performance prejudiced the defense," meaning counsel's "errors were so serious as to

deprive the defendant of a fair trial." *Id.* To meet this prong, Danner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This is an objective inquiry. *Breakiron v. Horn*, 642 F.3d 126, 145 (3d Cir. 2011). "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."[17] *Strickland*, 466 U.S. at 687.

Upon review, the court concludes that Danner has failed to demonstrate that any of these sub-issues are "substantial," so as to prove PCRA counsel's ineffectiveness. *See Martinez*, 132 S. Ct. at 1318-19. Initially, the court notes that two of Danner's sub-issues are belied by the state court record, or are simply nonsensical. Specifically, with respect to Danner's second sub-issue that his trial counsel failed to obtain various documents, evaluations and reports in preparation for trial, the state court docket

---

[17] Pennsylvania applies the same test for ineffective assistance of counsel as the federal courts. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). In Pennsylvania, the ineffective assistance of counsel standard requires the petitioner to "rebut the presumption of professional competence" by demonstrating: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Sneed*, 899 A.2d 1067, 1076 (Pa. 2006). If the petitioner fails to satisfy any of the standard's prongs, the claim will be rejected. *Id.*

indicates that the trial court issued several orders for the furnishing of various relevant records to defense counsel prior to trial. (Doc. 22-8 at 6-7.) Further, in an omnibus pretrial motion filed by trial counsel, counsel acknowledged receipt of discovery such as the information, police criminal complaints, and witness statements. (Doc. 22-2 at 4.) With respect to Danner's seventh sub-issue that his trial counsel was ineffective for failing to represent him after he fired both counsel, this claim fails as it is nonsensical. Without any allegations related to why Danner fired his counsel or any assertions of mental incompetence on the part of the defendant,[18] the court will not grant relief on a claim that hired counsel was ineffective after their representation of their client had concluded.

With respect to his first sub-issue, Danner fails to allege any facts to support a conclusion that a familial relationship between Attorney Bierne and the District Attorney and the Jury Commissioner altered the outcome of the trial. Rather, he makes a conclusory assertion that the very fact of these relationships *per se* prejudiced him. In addition, with respect to his twelfth sub-issue, Danner fails to allege any facts

---

[18] Although *pro se* filings are subject to less stringent pleading requirements and should be liberally construed, the rules governing habeas corpus petitions demand more than notice pleading. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Danner must "specify all grounds for relief available" to him and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting 28 U.S.C. § 2254, Rule 2(c)).

to support a conclusion that any potential jurors had bias against him. While he generally points to Jurors Five, Six, and Twelve, he does not specify how these jurors displayed bias against him. Relative to both sub-issues here, the court cannot grant relief based on vague and conclusory allegations. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).

With respect to his third sub-issue, initially the court concludes that Danner has failed to allege facts to demonstrate that he received ineffective assistance of counsel at the preliminary hearing based on counsel's failure to cross-examine witnesses. At the preliminary hearing, two witnesses were called - the victim and her grandmother. (*See* Doc. 22-1 at 7.) Danner's counsel did, in fact, cross-examine the victim. (*Id*. at 25-39.) Further, the prosecutor asked of the victim's grandmother her address and what her relationship was with the victim and Danner. (*Id*. at 41.) Based on this very brief identification testimony, defense counsel did not cross-examine. (*Id*.) Upon review of this record, Danner has failed to establish deficient performance on the part of counsel. *Strickland*, 466 U.S. at 668. Further, he is unable to show that, but for counsel's failure to cross-examine the grandmother, there is a reasonable probability that the result of the proceedings would have been different. *Id*. Turning to his other allegation relating to the preliminary hearing, Danner suggests that counsel was

ineffective for failing to ensure that the hearing was properly recorded. The record reveals that the court monitor noted in her transcript that any of the inaudible and/or unintelligible portions were caused by the witness and counsel not speaking loudly enough to be recorded properly. (*Id.* at 6.) Here, even if it had been error for counsel not to ensure the proper recording, it was harmless error. Under both state and federal law, deficiencies in a preliminary hearing are harmless where the prosecution presents enough evidence at trial to send the case to a jury. *See Commonwealth v. Hess*, 414 A.2d 1043, 1048 (Pa. 1980) ("If in fact it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the [preliminary hearing] would have been harmless."); *see also United States v. Voigt*, 89 F.3d 1050, 1068 (3d Cir. 1996) ("[E]rror arising from the district court's failure to hold an independent evidentiary hearing . . . is unquestionably harmless . . . [when] trial testimony . . . provided the district court with a sufficient evidentiary record."). In this case, the Commonwealth presented enough evidence to send the case to the jury. Therefore, trial counsel was not ineffective for failing to confirm that the testimony was being properly recorded, as it would have been a meritless issue. *See United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) (holding counsel cannot be deemed ineffective for failing to raise a meritless claim).

With respect to Danner's fourth sub-issue related to various remarks made by the prosecutor at trial, the court notes that in order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abramson*, 507 U.S. 619, 638 (1993). In the Third Circuit, this inquiry involves examining "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). Upon review, the court finds that even assuming that the prosecutor's remarks related to (1) Danner picking up the victim from school after the incident, (2) the Bible containing accounts of rape, and (3) the victim's testimony that Danner stated after the incident, "the Devil is laughing at me," were improper, taken as a whole, these remarks were not so egregious that Danner was deprived of a fair trial.

Therefore, counsel's failure to object does not rise to the level of a constitutional violation.

As to Danner's sub-issues five, eight and nine, Danner fails to explain how the ineffectiveness asserted in any of these sub-issues shows prejudice, or stated otherwise, would have altered the outcome of the trial. *See Strickland*, 466 U.S. at 694. Specifically, in light of the record demonstrating that trial counsel based its defense on Danner's alleged innocence and an attack of the credibility of the victim, Danner's allegations with respect to trial counsel's failure to make statements in support of his defense (sub-issues five and eight), failure to object to a trial court instruction that had the potential to benefit Danner, as it addressed the credibility of the victim (sub-issue eight), and failure to object to or move to strike testimony of the victim and her mother (sub-issue nine), do not satisfy a showing of prejudice, *see Strickland*, 466 U.S. at 687, or are too vague so as to prevent the court from meaningfully addressing them, *see Zettlemoyer*, 923 F.2d at 298.

As to Danner's sub-issue ten and eleven, relating to the seating of jurors, again Danner cannot show prejudice. The record reflects that prior to opening statements, a juror with hearing problems voiced his concerns, and the trial court promptly rearranged the jurors in order to place that juror in a position where he could clearly

hear the proceedings. (Doc. 22-3 at 13.) Also, at the beginning of its charge to the jury following the close of testimony, the trial court recognized that some of the jurors served on a jury the previous day in a case with similar charges. (Doc. 22-7 at 9.) The court stated that some of the instructions would be the same, but stressed that "it's a separate case, separate instructions." (*Id*.) In his petition, Danner ignores these curative actions taken by the trial court in both instances, and rather simply attempts to raise the issues based on their very existence in the record. Without more, and in light of the record, Danner has not made a showing of prejudice based on any failure to object or other ineffectiveness here. *See Strickland*, 466 U.S. at 687.

Finally, with respect to Danner's sub-issue six related to polling the jury, the court notes that defendants do not have a federal constitutional right to poll the jury. *United States v. Beldin*, 737 F.2d 450 (5th Cir. 1984). Further, counsel does not render ineffective assistance by failing to poll a jury where there is nothing in the record to indicate that any juror was uncertain of the verdict, *United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982); nor does counsel render ineffective assistance by declining to have the jury polled individually without first consulting with the defendant, *United States v. Gerardi*, 586 F.2d 896, 899 (1st Cir. 1978). Even if "unwise . . . in hindsight, (such a choice) does not constitute constitutionally-deficient

representation under the reasonably competent assistance standard." *Id.* Here, trial counsel had no reason to believe that the verdict was anything less than unanimous, and their decision not to seek an individual poll does not constitute ineffective assistance of counsel. *Id.* Further, Danner cannot show that, but for counsel's failure to poll the jury, there is a reasonable probability that the result of the proceedings would have been different. *Strickland*, 466 U.S. at 668.

In sum, and based on the foregoing discussion, because Danner has failed to establish that his relevant underlying trial counsel ineffectiveness claims are "substantial," the alleged PCRA counsel ineffectiveness cannot constitute cause to excuse procedural default of his underlying claims under *Martinez*. Nor has Danner been able to establish a miscarriage of justice if these sub-issues to this claim in his habeas petition are not considered by the court. *See* Section II.B.1.a, at 15-22.

### c.     **Claim Three - *Brady* Violation**

In his third claim for habeas relief, Danner claims that the prosecutor failed to provide discovery materials to Danner and his counsel "at a meaningful time," in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). More specifically, Danner claims that the prosecutor failed to produce at trial the police officers and Children & Youth Services ("CYS") personnel who authored the reports and evaluations

supporting the charges against Danner.[19]  In their answer, Respondents argue that this claim was not presented to the state courts, and thus it is unexhausted and should not be considered by this court.

After a review of the record, it is apparent that this claim was not raised in the state courts and, therefore, is unexhausted.  Further, because it appears that any second PCRA petition filed by Danner would be untimely, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date judgment becomes final), this issue is procedurally defaulted.  Turning to whether procedural default can be excused, Danner does not allege cause for his default here, much less prove it, and therefore the court need not consider whether there would be prejudice if this claim was not considered.  To the extent that Danner alleges that failure to consider this claim would result in a fundamental miscarriage of justice, the court has already determined that Danner has not made this showing to excuse procedural default.  *See* Section II.B.1.a, at 15-22.

### d.    <u>Claim Four - Prosecutor Leading Questions</u>

---

[19]  Importantly, in this claim, Danner is asserting that the *prosecutor* failed to call certain witnesses rather than arguing that his counsel was ineffective for failing to call certain witnesses.

In his fourth claim for habeas relief, Danner claims that the prosecutor violated his rights by asking leading questions of the witnesses at trial. This stand-alone claim of prosecutorial misconduct was not raised in the state courts and, therefore, is unexhausted. Further, because it appears that any second PCRA petition filed by Danner would be untimely, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date judgment becomes final), this claim is procedurally defaulted. However, the court will address this claim in connection with Danner's ineffectiveness claim, Claim Two, *see supra* note 13, at 23, as such ineffectiveness claim was presented to the state courts.[20]

### e.    Claim Five - Appellate Review

In his fifth claim for habeas relief, Danner claims that the Pennsylvania Superior Court denied his right to fair and impartial appellate review by reviewing the PCRA court's notice of intent to dismiss without a hearing rather than remanding to the PCRA court for a further decision. In their answer, Respondents argue that this claim was not presented to the state courts, and thus it is unexhausted and should not be considered by this court.

---

[20]  Danner did not raise the issue of the prosecutor's erroneous argument to the jury in the state courts; thus, the court will not discuss the merits of this procedurally defaulted issue.

After a review of the record, it is apparent that this claim was not raised in the state courts and, therefore, is unexhausted. Further, because it appears that any second PCRA petition filed by Danner would be untimely, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date judgment becomes final), this issue is procedurally defaulted. Turning to whether procedural default can be excused, Danner does not allege cause for his default here, much less prove it, and therefore the court need not consider whether there would be prejudice if this claim was not considered.[21] To the extent that Danner alleges that failure to consider this claim would result in a fundamental miscarriage of justice, the court has already determined that Danner has not made this showing to excuse procedural default. *See* Section II.B.1.a, at 15-22.

### f.    **Claim Six - Fair and Impartial Jury**

In his sixth and final claim for relief, Danner claims that he was denied his right to a fair and impartial jury. More specifically, he claims that he was denied a fair trial when: (1) an individual with deficient hearing was permitted to serve as a juror in his case; (2) an unidentified number of jurors on his panel had recently served as jurors in another criminal case involving similar charges; and (3) counsel failed to disclose

---

[21] To the extent that Danner's exhausted claims are incorporated in this claim related to the Superior Court's review of his claims, the court will address those exhausted claims herein.

their familial relation to opposing counsel and the jury commissioner.  In their answer, Respondents argue that this claim was not presented to the state courts, and thus it is unexhausted and should not be considered by this court.

After a review of the record, it is apparent that this claim was not raised in the state courts and, therefore, is unexhausted.  Further, because it appears that any second PCRA petition filed by Danner would be untimely, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date judgment becomes final), this issue is procedurally defaulted.  Turning to whether procedural default can be excused, Danner does not allege cause for his default here, much less prove it, and therefore the court need not consider whether there would be prejudice if this claim was not considered.  To the extent that Danner alleges that failure to consider this claim would result in a fundamental miscarriage of justice, the court has already determined that Danner has not made this showing to excuse procedural default.  *See* Section II.B.1.a, at 15-22.


### 2.    **AEDPA Merits Review**

Once a court has determined that the exhaustion requirement is met, and therefore that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). AEDPA places the burden on the petitioner to make this showing. *Williams v. Taylor*, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of § 2254 have independent meaning. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court. *Williams*, 529 U.S. at 405. This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [Supreme Court] precedent.'" *Wilkerson v. Klem*, 412 F.3d 449, 452 (3d Cir. 2005) (quoting *Williams*, 529 U.S. at 406). Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts[] of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)). For the purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 75-76, 123 S. Ct. 1166 (quoting *Williams*, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75, 123 S. Ct. 1166.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established

federal law as determined by the Supreme Court." Thus, § 2254(d)(1)'s "clearly established Federal law" signifies the holdings, not the dicta, of Supreme Court decisions. *Howes v. Fields*, ___ U.S. ___, ___, 132 S. Ct. 1181, 1187 (2012). Specifically, only Supreme Court law established at the time of the state court's decision can be a basis for habeas relief under AEDPA. *See Green v. Fisher*, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011) ("§ 2254(d)(1) requires federal courts to 'focu[s] on what a state court knew and did,' and to measure state-court decisions 'against this Court's precedents *as of* '*the time the state court renders its decision*.'") (quoting *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S. Ct. 1388, 1399 (2011) (emphasis added)). Therefore, federal habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at ___, 131 S. Ct. at 1398. Finally, "under the AEDPA standard, the '[s]tate court[s'] relevant factual determinations are presumed to be correct unless the petitioner rebuts [that] presumption by clear and convincing evidence.'" *McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 101 (3d Cir. 2012) (quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)) (citing 28 U.S.C. § 2254(e)(1)).

Turning to § 2254(d)(2), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence,"

§ 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (citing *Rice v. Collins*, 546 U.S. 333, 338-39, 126 S. Ct. 969, 163 L.Ed. 2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Further, as with § 2254(d)(1), the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. *Rountree*, 640 F.3d at 538 (citing *Cullen*, ___ U.S. at ___, 131 S. Ct. at 1401-03).

"If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 786 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." *Id*. Further, it was designed to be difficult "to ensure that state-court judgments are accorded the finality and respect

necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez*, 132 S. Ct. at 1316.

Finally, AEDPA scrutiny is applicable only if the state court adjudicated the petitioner's claims "on the merits." 28 U.S.C. § 2254(d); *see Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004), *rev'd on other grounds, Rompilla v. Beard*, 545 U.S. 374 (2005) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). Further, an "adjudication on the merits" can occur at any level of state court. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). However, "to qualify as an 'adjudication on the merits,' the state court decision must finally resolve the claim. This means that the state court's resolution of the claim must have preclusive effect." *Id*. (citing *Rompilla*, 355 F.3d at 247 (quoting *Sellan*, 261 F.3d at 311)). Where a state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential AEDPA standards do not apply, and the federal court must exercise *de novo* review over pure legal questions and mixed questions of law and fact. *Simmons v. Beard*, 581 F.3d 158, 165 (3d Cir. 2009) (citing *Appel*, 250 F.3d at

210).  However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.[22]  *Simmons*, 581 F.3d at 165 (citing *Appel*, 150 F.3d at 210).

### a.   Ineffective Assistance of Counsel Standard

Prior to discussing Danner's exhausted claims, the court will set forth the standard for ineffective assistance of counsel, as it relates to these claims.  A claim for ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance claim, a petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation was prejudicial to the petitioner.  *Id.* at 688; *see also Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007).  In determining whether counsel has met the objective standard of reasonableness, courts must be highly deferential towards trial counsel's conduct.  *See Strickland*, 466 U.S. at 686.  "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

---

[22] In fact, "the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d)." *Thomas*, 570 F.3d at 116 (quoting *Nara v. Frank*, 488 F.3d 187, 200-01 (3d Cir. 2007)).

counsel's perspective at the time.  There is a 'strong presumption' that counsel's performance was reasonable."  *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001) (alteration in original) (citations and quotations omitted).  Counsel cannot be deemed ineffective for failing to raise a meritless claim.  *See United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).  To satisfy the prejudice prong, a petitioner must show a reasonable probability that, but for the errors of his or her counsel, the outcome of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.

The two-prong test for ineffective assistance of counsel established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of AEDPA. *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)).[23]  Thus, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts.  *Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005); *Werts v. Vaughn*, 228 F.3d at 178, 204 (3d Cir. 2000).

> **b.**     **Claim Two - Sub-Issue: Counsel's Failure to Object to Prosecution's Leading Questions**

---

[23]  The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong *Strickland* analysis.  *See supra* note 17, at 28.

In this exhausted claim for relief, Danner claims that trial counsel was ineffective for failing to object to the prosecution's leading questions. Upon review, the court finds that Danner is not entitled to habeas relief on this claim.

The background of this claim is as follows. At trial, the prosecutor called the victim and three other witnesses to form the basis of the Commonwealth's case against Danner. During his direct examinations, the prosecutor examined some of these witnesses through the use of leading questions. In the instant petition, Danner directs the court to several exchanges between the prosecutor and the witnesses, which the court will recount here, only in part.[24] First, the prosecutor had the following exchange with the victim:

> Q:  Okay. And did your father ever tell you an expression about what happens in Bradford County stays in Bradford County?
>
> A:  Yes.
>
> Q:  Does he say it that way or does he say what happens at hunting camp, happens at hunting camp?
>
> A:  Um-um.

---

[24] Danner does not refer to specific questions or testimony, but simply to these pages from the notes of testimony from trial: Pages 75-90; 92-96; 98-102; 107-08; 111-113; 127-129; and 130-137. (*See* Doc. 11 at 14.)

(Doc. 22-4 at 28, Notes of Testimony ("NT"), Trial, 4/24/08.)  They later had this

exchange about the incident itself:

> Q: What's the next thing that happened after you told him to stop and he kept rubbing your leg?
>
> A: He did stop then and we were talking for a while.
>
> * * *
>
> Q: And during that time did he touch you any?
>
> A: He kept rubbing my arm.
>
> Q: What part of your arm?
>
> A: Right here.
>
> Q: And was he standing beside the bed?
>
> A: No, he was sitting on the bed.
>
> Q: Did you tell - say anything to him about him rubbing your arm?
>
> A: Yeah, I told him to stop.
>
> Q: Why'd you tell him to stop?
>
> A: Because I didn't want him to touch me.
>
> Q: Did he - did he smell drunk or smell like alcohol -
>
> A: Yes.
>
> Q: - at that point? Was he acting normal?

A:      No.

* * *

Q:      What - what happened next?

A:      He kept saying he loved me and he wouldn't do anything to hurt
        me.

Q:      Did he say anything else?

A:      No.

Q:      Did he do anything?

A:      He started to pull down my sweat pants.

Q:      What did you do?

A:      I told him to stop.

Q:      Did he say anything then?

A:      No.

Q:      Did he keep pulling on your sweat pants?

A:      Yes.

Q:      Did you do anything else to stop him?

A:      No, I was in shock, I didn't know what to do.

Q:      What were you think - what did you think he was going to do once
        he pulled your sweat pants down?

A:     I thought he was going to rape me.

Q:     Did he keep pulling your pants down?

A:     Yes.

Q:     How far down did he pull your pants?

A:     He pulled them off.

Q:     Then what happened?

A:     He got on top of me.

Q:     Did he say anything then or just get on top of you?

A:     No, he didn't say anything.

Q:     Did he have clothes on at that point?

A:     No.

Q:     When - but he had clothes on when he came over to the bed.

A:     Yes.

Q:     When did he take his clothes off if you know?

A:     After he pulled my sweat pants down.

* * *

Q:     There's a box of Kleenex there if you need it. What happened then?

A:     He raped me.

Q:     Well, I think I know what you meant, but I, unfortunately, it's my job to be a little more specific.  When you say he raped you, what parts of his body are you talking about?

A:     His penis was inside of me.

Q:     Inside your vagina?

A:     Yes.

Q:     As he was doing that, did he say anything or do anything else?

A:     No.

Q:     Did he - what - what's the next thing that happened after he - I take he -

A:     I pushed him -

Q:     kept raping you until he was finished?

A:     I - no, I pushed him off me right away.

Q:     Then what happened?

A:     I grabbed my sweat parts and put them back on and went downstairs into the basement.

Q:     And you put your stuff on and went to the basement?  Why'd you go to the basement?

A:     Cause I didn't know where else to go.

(*Id*. at 44-49.)  They then had this exchange about what happened after the incident:

Q:     Okay.  Did he ever say something about shooting me?

A:     Yes.

Q:     When did he tell you that?

A:     I don't - I'm not sure.

Q:     Was it -

A:     Sometime earlier at the picnic table [in the basement].

Q:     Okay.  Did he ever say I'm sorry or why he did that or anything?

A:     No.

Q:     Was he trying - was he - was he acting in a kind way towards you when he was in the cellar?

A:     No.

Q:     How was he acting?

A:     He was just - kinda just sitting there like - like he didn't know what was going on.

Q:     Alright.  How long did you stay down in the cellar?

A:     For like a half hour.

Q:     Did - and during that half hour did you just sit there and he talked and you listened?

A:     Yeah.

* * *

Q:     How did it happen that you left the cellar?

A:     I said, "Let's go down to Dup and Tracey's, cause I don't want to be in the house."

Q:     You didn't want to be in your grandma's house anymore?

A:     No.

(*Id*. at 51; Doc. 22-5 at 1.)  Later, the two had the following exchange:

Q:     What was the nature of your problem at school?

A:     Me and my mom were fighting and I was talking to my counselor about it.

Q:     And you were upset?

A:     Yes.

Q:     Alright.  And then that led to your counselor calling your dad or your dad and mom?  Or somehow your parents got involved in this?

A:     Yes.

Q:     And did your dad come get you from school?

A:     Yes.

Q:     At - and you went back to your mom's house?

A:     Yes.

Q:     Okay.  And then did you continue to go to school the rest of the week?

A:     Yes.

Q:     Did - did you ever tell your mom, or excuse me, during that week - after you got back from the hunting trip, did you tell - tell your mom you changed your mind about living with your dad?

A:     Yes.

* * *

Q:     Alright. What - did there come a day - a time your dad came to pick you up?

A:     Yes.

Q:     Did you tell your mom then what had happened?

A:     Yes.

Q:     Were you able to tell your mom or did somebody have to help?

A:     My boyfriend at the time told her.

* * *

Q:     When did you tell him what happened?

A:     I'm not sure what day it was.

Q:     Okay. Did you tell him about your dad raping you?

A:     Yes.

Q:     And tell him about the drinking and your dad had given you drinks?

A:     Yes.

(Doc. 22-5 at 9-10.)  Towards the end of the direct examination, the two had this

exchange:

Q:      Did you want him to do this to you?

A:      No.

Q:      Do you think you in any way encouraged him to do this to you?

A:      No.

Q:      You didn't want to do this at all?

A:      No.

Q:      Did you want your mom to find out about it?

A:      Yes.

Q:      Okay.  At first, did you - did you try to call your mom from your grandma's house or anything?

A:      I did call her, but there's not very good reception up there. I couldn't talk to her long.

Q:      But did you tell her what your dad did?

A:      No.

Q:      Were you ashamed of yourself at that point?

A:      Yes.

Q:      Were you embarrassed?

A:    Yes.

(*Id*. at 13.) Danner also cites to the following exchange between the prosecutor and

Jenna Werkheiser, one of the victim's friends:

Q:    Alright.  And was there - did there come a time that [the victim]
      told you about something bad happening with - up there with her
      father?

A:    Yes.

Q:    Alright.  When did you hear that something bad had happened?

A:    We were walking in Northampton and she just said that something
      happened bad when she was up hunting.

Q:    Did she give you anymore detail than that?

A:    She just said that between her and her dad there was drinking and
      something happened, but she didn't go into detail.

* * *

Q:    Oh, okay.  Did you tell her anything - did you suggest that maybe
      she ought to tell somebody about it?

A:    Yes.  I told her that she should tell her mom.

Q:    And did - what did she say when you told her that?

A:    That she was nervous.

Q:    And did you follow up on it?

A:    Yes.

56

Q:     Okay.  How did you follow up on it?

A:     I kinda just like pushed her to, but I figured that she wouldn't, but I
       was like you need to tell her, because this is something important
       that you can't mess around with.

Q:     So, you knew she was upset?

A:     Yeah.

(Doc. 22-5 at 30-31.)  Finally, the prosecutor had the following exchange with

Michael Kelley, the victim's boyfriend at the time of the incident:

Q:     And [the victim] was very fond of her dad as far as you knew?

A:     Yeah.

Q:     And had - thought that she had a real good relationship with her
       dad?

A:     Yeah, that's what it seemed like.

Q:     And she had some issues with her mom?

A:     Yeah.

Q:     Some problems there, right?

A:     Yeah.

* * *

Q:     Alright.  And - so, the particular day that you told her mom, Mister
       Danner had come to the house at that point?

57

A:      Yeah.

Q:      And what was [the victim's] react - how was [the victim] reacting
        to Mister Danner coming to the house?

A:      She was just crying hysterically.

(*Id*. at 35, 38.)

Danner raised this claim before the PCRA court, and the court denied it.  As a

result, the Pennsylvania Superior Court addressed the claim in its November 17, 2009

decision affirming the PCRA court's decision.  In doing so, the Superior Court held as

follows:

> For his second argument, Danner claims counsel was ineffective
> for failure to object to the prosecution's leading questions.  The PCRA
> court found Danner failed to prove prejudice because the prosecution
> could have elicited the same testimony with non-leading questions.
> Order, 11/11/08, at 2.  We agree with the PCRA Court [that] Danner
> failed to plead he was prejudiced by trial counsel's failure to object to the
> prosecution's leading questions.  Accordingly, we find the PCRA Court's
> decision is supported by the record.

(Doc. 22-9 at 50.)  Specifically, the Superior Court confirmed the PCRA court's

conclusion that:

> [Danner] cannot prove as a matter of fact that he was prejudiced by
> counsel's failure to object to leading questions, because he cannot prove
> as a matter of fact that the District Attorney would have been unable to
> elicit the same evidence with non-leading questions.  The authority cited
> in [Danner]'s petition is meaningless, because all of those cases involved

> the failure to object to *inadmissible* evidence. [Danner] does not suggest
> that any of the evidence elicited by leading questions was inadmissible[.]

(Doc. 22-8 at 44-45) (emphasis in original).

In reviewing this claim that trial counsel was ineffective for failing to object to the prosecutor's leading questions, again, it is noted that in order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 180. A prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 638. Again, in the Third Circuit, this inquiry involves examining "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore*, 255 F.3d at 107.

Here, as the state courts did, this court must determine whether Danner was prejudiced by his counsel's failure to object to the prosecutor's leading questions. Upon that review, the court finds no error, of constitutional dimension of otherwise, in the decision of the Pennsylvania Superior Court with respect to this claim. Stated otherwise, the Superior Court's decision was not contrary to, or involved an

unreasonable application of, federal law. 28 U.S.C. § 2254. The court agrees that trial counsel's failure to object did not deprive Danner of a fair trial. Even if trial counsel's performance was deficient, Danner cannot show the required prejudice. A sustained objection for the leading questions would have resulted in nothing more than the prosecutor rephrasing his questions. In the end, the victim would have testified as to her account of the sexual assault, which the jury credited by returning a guilty verdict. Therefore, trial counsel's failure to object to the leading questions does not rise to the level of a constitutional violation. Further, to the extent that Danner is claiming that appellate counsel was ineffective for failing to properly raise this claim, the court finds no constitutional violation. Thus, Danner is not entitled to relief on this claim.

### c. Claim Two - Sub-Issue: Counsel's Failure to Call Witnesses

In his only other exhausted claim for relief, Danner claims that trial counsel provided ineffective assistance of counsel for failing to secure and call witnesses at trial on his behalf. Upon review, the court finds that Danner is not entitled to habeas relief on this claim.

The background of this claim is as follows. At trial, the Commonwealth presented the testimony of the victim and three lay witnesses to form its case-in-chief

60

against Danner. Despite the existence of police and CYS investigations, (*see* Doc. 22), the Commonwealth did not present any such resulting evidence at trial.

The defense also presented four witnesses. In addition to Danner himself testifying, the defense presented Tracey Davidson and John Biechy, two friends of Danner's who saw Danner and his daughter while they were on the hunting trip when the incident occurred. (Doc. 22-5 at 42-51; Doc. 22-6 at 1-13.) Judy Muffley, Danner's mother-in-law, also testified about seeing Danner and his daughter after the hunting trip. (Doc. 22-6 at 39-43.) These witnesses testified that the victim was acting normal, (*see* Doc. 22-5 at 49), seemed happy, (*see* Doc. 22-6 at 6), and seemed excited to be moving in with her father, (*see id.* at 40), respectively.

In his petition, Danner takes issue with defense counsel's decision to not call Pam and Gaylen Hoff, and Carl Muffley, lay witnesses who would testify as to the victim's actions and demeanor after the incident. (Doc. 11 at 7.) As a separate sub-issue, Danner also objects to counsel's decision not to present witness testimony from the police and CYS, who conducted investigations and evaluations in the case. (*Id.*) Danner did present this issue on appeal, and the Pennsylvania Superior Court denied it. In denying this claim, the Superior Court concluded as follows:

> Danner argues counsel was ineffective for failing to call four witnesses: Pam and Gaylen Hoff, and Car[ ]l and Judy Muffley (Hoff and

Muffley). Amended PCRA Petition, 10/31/08, at 10. According to Danner's petition these witnesses would testify about the victim's actions and demeanor after the incident. *Id*. at 10-11. Danner proposes the witnesses would demonstrate the victim's actions were inconsistent with her allegations, thereby attacking her credibility. *Id.*

While we find Danner waived this claim (*i.e.*, counsel was ineffective for failure to call Hoff and Muffley) by failing to develop it in his brief, *see Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042 (2003), we write to address this ineffectiveness claim because the PCRA court failed to do so.

Danner argues in his PCRA petition counsel was ineffective for failure to present witnesses to testify about the victim's actions and demeanor after the incident. However, because Danner failed to establish the witnesses were available or willing to cooperate and appear on his behalf, his claim ultimately fails. To establish counsel was ineffective for failure to present a witness, Danner must establish:

> (1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of, the witness; (3) the willingness and ability of the witness to cooperate and appear on behalf of the defendant; and (4) the necessity of the proposed testimony in order to avoid prejudice.

*Commonwealth v. Priovolos*, 552 Pa. 364, 368, 715 A.2d 420, 422 (1998). Danner did not show the witnesses were willing and able to cooperate and appear on his behalf. *See, e.g., Commonwealth v. Brown*, 767 A.2d 576 (Pa. Super. 2001). The PCRA Court did not address this argument in its order dismissing Danner's PCRA petition. While we acknowledge the PCRA court erred when it failed to address this issue, ultimately, Danner failed to establish counsel was ineffective for failure to present witnesses.

As discussed above, Danner argued in his PCRA petitions counsel was ineffective for failing to call Hoff and Muffley as witnesses. In his

> brief, however, Danner argues counsel was ineffective for failing to call witnesses from the police department and Children and Youth Services (CYS). We do not address the argument in Danner's brief because this argument was not presented in his PCRA petition. *See* Pa.R.Crim.P. 902(B) (Each ground relied upon in support of the relief requested shall be stated in the petition.).

(Doc. 22-9 at 48-49.) In a footnote, the Superior Court added that, "[a]lthough Danner requested an evidentiary hearing, he failed to include in his PCRA petitions the required signed certification as to each intended witness. *See* Pa.R.Crim.P. 902(A)(15)." (*Id*. at 49.)

The Superior Court decided the two sub-issues here in different ways. First, as to the issue of additional lay witness testimony, the state court reviewed the merits of Danner's issue, despite the PCRA court's failure to do so. Second, as to the issue of presentation of police and CYS testimony, the state court declined to review this issue because it was not presented in Danner's PCRA petition. After setting forth the appropriate standard, the court will address these two sets of witnesses in turn.

Danner does not contest the standard used by the state court in evaluating this claim. To establish a claim of ineffectiveness for failure to call a witness, a defendant must establish that: (1) the witness existed; (2) the witness was available to testify; (3) counsel was informed of the existence of the witness or where counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify

for defendant at trial; and (5) the absence of the testimony prejudiced defendant so as to deny him a fair trial. *See Commonwealth v. Ervin*, 766 A.2d 859, 865 (Pa. Super. Ct. 2000); *see also Priovolos*, 715 A.2d at 422. Further, ineffective assistance of counsel for failure to call witnesses will not be found where a defendant fails to provide affidavits from alleged witnesses indicating their availability and willingness to cooperate with the defense. *Commonwealth v. Khalil*, 806 A.2d 415, 422 (Pa. Super. Ct. 2002). In the context of an ineffectiveness claim based upon a failure to call a witness, the habeas petition "must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) (citation omitted).

As to the lay witnesses, as stated above, the Superior Court addressed the merits of this issue. In doing so, the court concluded that Danner failed to establish that counsel was ineffective for failing to present these witnesses because he did not show the witnesses were willing and able to cooperate and appear on his behalf. In the instant petition, Danner does not contest that this showing was not made before the state court, but attaches joint affidavits of Pam and Gaylen Hoff and Carl and Judy Muffley, respectively, that expressly state their willingness to testify at trial. (Doc. 11

at 37-39.)  Further, in both affidavits the affiants assert that they observed Danner's daughter soon after the incident and had no indication that she was in distress or had suffered a sexual assault or trauma.  (*Id*. at 37, 39, 40.)  In addition, the Hoffs assert that they do not believe the crime happened.  (*Id*. at 37.)  Reviewing these affidavits *de novo*, as they were not presented to the state courts, it is clear that they do not provide any new information that was not already considered by the jury.  In other words, this testimony, which goes to the victim's actions and demeanor after the incident, would be cumulative to the testimony of the three defense witnesses called at trial, who all testified to the very same thing - the victim's actions and demeanor after the incident.  As a result, the court concludes that, based on the record, Danner has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different if counsel had called these three additional witnesses. Without a showing of a reasonable probability of a different outcome, Danner has also failed to establish ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 687, 694.

Turning to the issue regarding the police and CYS witnesses, as stated above, the Superior Court did not address this claim because it was not presented in Danner's PCRA petition.  While it may be that this issue is procedurally defaulted, in the

interests of justice to this *pro se* petitioner, and because it is apparent that Danner did present it to the state courts, the court will exercise *de novo* review of this claim on the merits. *See* Section II.B.2, at 33-34 (addressing, *inter alia*, "adjudication on the merits"). To that end, Danner has neglected to proffer anything, other than his own claims, that would indicate that individuals from the police department or CYS had evidence favorable to his case or that such individuals were prepared to assist in his defense.[25] *See Ervin*, 766 A.2d at 865. Also, with nothing more than his bald assertions, Danner has failed to establish that the absence of police and CYS testimony prejudiced him so as to deny him a fair trial. *Id.* In sum, without a "specific, affirmative showing as to what the missing evidence would have been," Danner has not proven that these witnesses' testimony "would have produced a different result." *Patel*, 19 F.3d at 1237. Thus, Danner has not established an ineffective assistance of counsel claim here. *See id.* Danner is not entitled to habeas relief on this claim.

---

[25] Interestingly, the court notes that the affidavit of probable cause in the criminal complaint, filed by police in this case and used to charge Danner with rape and the related offenses, essentially echoes the testimony of the victim. (*See* Doc. 22-1 at 3.)

## III.  Conclusion

For the foregoing reasons, the petition for writ of habeas corpus will be denied. Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a petition under 28 U.S.C. § 2254, the district court must make a determination as to whether a certificate of appealability should issue.  3d Cir. L.A.R. 22.2.  A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet this burden a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484-5 (2000) (internal citations and quotations omitted).  In the present matter, the court concludes that reasonable jurists could debate whether Danner is entitled to habeas relief for trial counsel's failure to secure and call additional lay witnesses at trial on his behalf.  As such, a certificate of appealability will issue as to that claim only.  The court further concludes that reasonable jurists would not debate whether the court properly resolved all remaining issues presented.

An appropriate order will issue.

                                    s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated:  July 1, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DAVID RUSSELL DANNER,**     :     **CIVIL NO. 1:11-CV-00946**

    : 

          **Petitioner**     :     **(Judge Rambo)**

    : 

     **v.**     : 

    : 

**KENNETH P. CAMERON,** *et al.*,     : 

    : 

        **Respondents**     : 

# O R D E R

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) The petition for writ of habeas corpus (Doc. 11) is **DENIED**.

2) In accordance with 29 U.S.C. § 2253(c)(2) and M.D. Pa. L.R. § 83.32.2, a certificate of appealability is **GRANTED** as to Petitioner's claim that he is entitled to habeas relief as a result of trial counsel's failure to secure and call additional lay witnesses at trial.

3) The Clerk of Court is directed to **CLOSE** this case.

           s/Sylvia H. Rambo

           SYLVIA H. RAMBO

           United States District Judge

Dated: July 1, 2013.